IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARIO WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CIV 22-234-RAW-JAR |
| ) | |
| CORE CIVIC INC., et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff is a pro se state prisoner in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Davis Correctional Center (DCF), a private prison in Holdenville, Oklahoma. He brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at DCF. The defendants are Core Civic, Inc., Assistant DCF Warden Michael Moriarity, and "John Doe," an "unknown SORT Team officer." The Court has before it for consideration Plaintiff's complaint (Dkt. 1), a special report prepared by DCF officials at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 18), Defendants' motion for summary judgment (Dkt. 23), and Plaintiff's response to the motion (Dkt. 24).

I.    Plaintiff's Allegations

Plaintiff raises the following claims:

A.    Count One: Religious Freedom. Plaintiff alleges that on April 2, 2022, he and other DCF inmate Muslims began a 30-day fast for Ramadan. He asserts that all DCF staff members were made aware of the fast through a memo dated April 1, 2022. On May 2, 2022, however, the staff provided the Muslim inmates their before-sunrise meal at approximately 4 a.m. When it came time to break the fast at sunset, DCF staff allegedly refused to serve the Muslim inmates a meal. Therefore, the Muslim inmates did not eat or drink anything all day during daylight hours, and they were provided nothing by the staff. All the Muslim inmates allegedly alerted DCF staff that they needed their meals and that it was the last day of fasting. The Muslim inmates, including Plaintiff,

were told that Assistant Warden Moriarity had instructed the staff not to feed the Muslims because Ramadan was over. Plaintiff asserts he was denied the right to practice his faith in accordance with the tenets of Islam. (Dkt. 1 at 7).

      B.      Count Two: Excessive Force. Plaintiff next alleges that on or about March 30, 2022, the DCF SORT Team entered his pod (Bravo South), shooting a pepper gun at inmates. In response, Plaintiff came to his cell door and opened it slightly to see what was happening. A "Latino or Mexican" SORT officer turned his gun on Plaintiff and fired about five shots. The balls exploded in his face, neck, and arms and began to burn. It became hard for Plaintiff to breathe, and he began choking. He claims he was left in his cell without any medical treatment or decontamination, and he was not allowed to clean his cell door. He maintains he did not violate any prison rules that day, and he was not a threat to anyone. *Id.* at 7-8.

      C.      Count Three: Religious Freedom, RLUIPA,[1] and Equal Treatment. Plaintiff alleges that when he arrived at DCF in November 2021, he was informed that Halal meals were being prepared and served in violation of Islamic and DOC policy standards. He set a meeting with the kitchen supervisor to discuss Halal meal preparation and the personnel who were allowed to prepare and serve the meals. On April 13, 2022, Plaintiff he submitted Request to Staff (RTS) No. 22-1844 to "rectify the issue." He again spoke to the supervisor and was advised that the issue had been addressed. After no visible changes were made, Plaintiff again spoke with the supervisor and submitted RTS No. 22-2508. He then filed Grievance No. 22-1001-164-G on the issue and was granted relief. He next spoke with Assistant Warden Moriarity, who had investigated and granted the relief. Plaintiff requested that Moriarity visit the kitchen to see that there had been to changes to the issues addressed in the grievance. Plaintiff asserted the Halal preparation area was not in compliance with DOC policy, however, Moriarity refused the request.

Plaintiff tried to contact the DOC Contract Monitor by filing an RTS, but the RTS was forwarded to the warden, who said the issue was resolved. Plaintiff contends he presently is being

---

[1] The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc.

denied proper Halal meal preparation and service, with the area being in the open with the general population line, utensils used with the general population, and the items are rinsed, not sanitized. Also, the Halal meals are prepared by homosexuals, which violates Islam.  The Kosher meal preparation area, however, allegedly is in compliance with DOC policy with a secure room with utensils, refrigerator, containers, pots, pans, prep area, and cleaning supplies. *Id.* at 8-9.

II.     Standard of Review

Defendants have filed a motion for summary judgment. (Dkt. 23).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*  In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c).  Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

III.    Exhaustion of Administrative Remedies

Defendants allege that Plaintiff has failed to exhaust the administrative remedies for any of his claims.  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v.*

*Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). He must properly complete all required steps of the grievance process to exhaust his administrative remedies. *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. Dec. 28, 2007); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .").

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff about the incident. If that is unsuccessful, he may submit an RTS to the appropriate staff member within seven calendar days of the incident, alleging only one issue or incident per form. If the offender does not receive a response to his RTS within 30-60 calendar days of submission, he may submit a grievance to the reviewing authority, asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender then may submit a grievance within 15 days from the date of receipt of the RTS response, attaching the RTS with the response from the staff member. If the grievance also does not resolve the issue, the inmate may appeal to the DOC Administrative Review Authority (ARA), Personal Identity ARA, or Medical ARA, whichever is appropriate. The administrative process is exhausted only after all of these steps have been taken. (DOC OP-090124; Dkt. 23-3 at 8-18).

    A.    Plaintiff's Grievances

The DCF Grievance coordinator is Terry Underwood. According to her affidavit, her duties include maintaining all facility grievance records and logs, reviewing grievances for procedural compliance, and conducting an initial investigation of submitted grievances. Ms. Underwood states she reviewed Plaintiff's records for the appropriate time period beginning with his arrival on November 24, 2021. There were six grievance submissions during the time period related to his complaints. Plaintiff, however, did not properly pursue any of those six submissions through a proper

4

conclusion. (Dkt. 23-2 at 4, at ¶7). The grievances were as follows:

    1.    Grievance 2022-1001-00123-G: Plaintiff submitted an RTS to Warden Norwood, dated by Plaintiff as March 30, 2022. The RTS was stamped as received on April 4, 2022, and it was forwarded to Chief of Security Brown for a response. The RTS complained of a use of excessive force on Bravo South that occurred on March 30, 2022. Chief of Security Brown responded, stating there were no incidents on March 3, 2022--not March 30, 2022, as Plaintiff alleged.

Plaintiff's grievance was received on May 3, 2022. The grievance requested a response to his March 30, 2022, RTS. Warden Norwood responded on May 19, 2022, stating that the RTS had been answered, which was Plaintiff's requested relief. Plaintiff did not use the final step of the administrative remedy process by appealing to the DOC ARA. (Dkts. 23-2 at 4-5, ¶ 8; 23-4 at 2-5).

    2.    Grievance 2022-1001-00157-G: Plaintiff again used the RTS he completed on March 30, 2022. When he received the response to Grievance 2022-1001-123-G dated May 23, 2022, he submitted this second grievance dated May 27, 2022, which was received on June 1, 2022. The relief requested in this second grievance was, "Investigate this matter on the correct date specified in said RTS." Warden Norwood confirmed there were no incidents on Bravo South on March 30, 2022. Plaintiff received this grievance response on June 17, 2022. The requested relief (to investigate the alleged March 30, 2022, incident) was granted. Plaintiff, however, did not use the final administrative step by appealing to the DOC ARA. (Dkts. 23-2 at 5, ¶ 9; 23-4 at 6-11).

    3.    Grievance 2022-1001-164-G: On May 18, 2022, Plaintiff submitted an RTS to the facility kitchen supervisor. His request was to provide a secure and separate designated preparation and serving area in the kitchen for Halal meals, as provided for the Kosher diet. The kitchen supervisor responded on May 24, 2024, stating, "The Halal menu is a [illegible] menu and with a sub for the meat item [illegible] from the [illegible] line."

Plaintiff filed a grievance on June 3, 2022. The relief sought was to have a separate and secure area of the kitchen for preparation of Halal meals. Warden Norwood responded to the grievance by stating the facility followed DOC policy. A separate area is provided for Kosher/Halal

meal preparation, and utensils are maintained in a secure and separate area. Therefore, Plaintiff was granted relief. Plaintiff did not appeal the warden's decision. (Dkts. 23-2 at 5-6, ¶ 10; 23-4 at 12-17).

      4.      Grievance 2022-1001-186-G: On June 27, 2022, a grievance dated June 23, 2022, was submitted by Plaintiff. The grievance had an RTS attached that was dated May 5, 2022. The grievance asked that an investigation be conducted about the staff's denying him and other inmates a Ramadan evening meal on May 2, 2022. Warden Norwood responded to the grievance, noting that Ramadan ended with the evening meal on May 1, 2022, as stated by Leo E. Brown, Agency Chaplain for the Oklahoma DOC. Ms. Underwood asserts relief was granted in that an investigation was conducted. Plaintiff did not pursue an appeal to the ARA. (Dkts. 23-2 at 6, ¶ 11; 23-4 at 18-20).

      5.      Grievance 2022-2002-188-G: On July 19, 2022, Plaintiff submitted a grievance dated July 19, 2022. The requested relief was, "Answer said RTS [concerning the alleged incident on March 30, 2022] in accordance with policy (grievance)." Assistant Warden Moriarity responded to the grievance on July 29, 2022, noting that the RTS had been answered, and a copy of the answered RTS was attached and sent to Plaintiff. Therefore, the requested relief, that is, an answer to the RTS was granted. Plaintiff, however, did not utilize the final step of the administrative remedy process by appealing to the ARA. (Dkts. 23-2 at 6-7, ¶ 12; 23-4 at 21-22).

      6.      Grievance 2022-1001-215-G: Another grievance by Plaintiff was received on August 5, 2022. He had attached to the grievance a copy of RTS No. 22-2925. This grievance again requested that an alleged use of force be investigated. After an initial procedural review of the grievance, Ms. Underwood determined that it had not been timely submitted. The grievance, therefore, was returned unanswered to Plaintiff on August 7, 2022. A return memorandum explaining why the grievance had been returned to him was attached. A copy of the returned grievance and memorandum was sent to Plaintiff on August 8, 2022. (Dkts. 23-2 at 7, ¶ 13; 23-4 at 23-29).

Plaintiff appealed the return decision to the DOC ARA. By memorandum dated August 23, 2022, the ARA determined that Plaintiff had improperly filed his appeal and returned the appeal to him unanswered. The ARA's return memorandum noted that Plaintiff had inaccurately documented

6

the date of August 9, 2020 in stating when he had received the reviewing authority's response and the date of his signature. He also was instructed that he would be afforded one additional opportunity to correct and then properly resubmit the corrected appeal within ten days of his receipt of the return memorandum. (Dkts. 23-2 at 7, ¶ 14; 23-4 at 26).

Plaintiff received the return memorandum from DOC ARA on October 10, 2022. He resubmitted the grievance appeal but did not do so until November 9, 2022. Plaintiff submitted a request asking that his appeal be considered out of time. The ARA denied his request. Plaintiff did not use the final step of the administrative remedy process to properly appeal to the DOC ARA. Therefore, Defendants claim that no issues related to Plaintiff's lawsuit were exhausted by this grievance submission. *Id.*

    B.    Discussion

Plaintiff has filed a response to Defendants' motion to dismiss, alleging he has exhausted the available administrative remedies for his three claims. Dkt. 24. He asserts Grievance 22-157-G exhausted his excessive force claim, Grievance 22-164-G exhausted his Halal claim, and Grievance 22-186 exhausted his Ramadan claim. *Id.* at 2. He contends the remaining three grievances, Nos. 22-123-G, 22-188-G, and 22-215-G are moot. He maintains the three relevant grievances were granted, and the DOC ARA does not review "granted" DOC grievances. *Id*. at 2. The defendants have not replied to Plaintiff's response to the motion to dismiss.

Plaintiff cites *Florence v. Berrios*, 212 F. App'x 722, 725 (10th Cir. 2006), for the proposition that "[a] prisoner is not required to appeal a favorable resolution of his grievance to exhaust administrative remedies."(citation omitted). *See also Williams v. Miller*,[2] No. CIV-14-61-W, 2015 WL 1207011, at *12 (W.D. Okla. Mar. 12, 2015) ("Having no adverse response to address in a grievance, Plaintiff had no duty to continue with the exhaustion process."); *Barnes v. Allred*, 482 F. App'x 308, 311 (10th Cir. 2003) ("[A] grievance satisfies § 1997e(a)'s exhaustion requirement only so long as it provides prison officials with enough information to investigate and address the inmate's

---

[2] Plaintiff Mario Williams was the plaintiff in this case.

complaint internally.") (citations omitted).

This issue was discussed in another of Plaintiff's previous cases which found the DOC Offender Grievance Policy "offers no mechanism for an appeal of a grievance that has been granted." *Williams v. Wilkinson*, 659 F. App'x 512, 520 (10th Cir. 2016) (citing the grievance policy regarding "Grounds for Appeal," *see* Dkt. 23-3 at 15). *See also Ross v. Cty. of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004) ("Once a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted. Prisoners are not required to file additional complaints or appeal favorable decisions in such cases."), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

IV.   Conclusion

After careful consideration of the pleadings and other submitted materials in this case, the Court is of the view that there is a genuine dispute of material fact concerning whether Plaintiff's claims are exhausted. Therefore, summary judgment must be DENIED pursuant to Fed. R. Civ. P. 56(a).

**ACCORDINGLY,** Defendants' motion for summary judgment (Dkt. 23) is DENIED.

**IT IS SO ORDERED** this 18th day of September 2023.

_____
RONALD A. WHITE
UNITED STATES DISTRICT JUDGE